UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLIAM MCDOW,

        Petitioner,               05 Civ. 9787 (RJH)

  - against -                    **MEMORANDUM OPINION**
                                             **AND ORDER**

MARCIAL ROSADO,

        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendant moves to amend the judgment issued by this Court on January 23, 2009 to eliminate the award of pre-judgment interest. Plaintiff opposes and cross-moves for attorney's fees. For the reasons stated below, the Court amends the judgment, strikes the pre-judgment interest awarded, and awards attorney's fees in the amount of $78,980 and costs in the amount of $3,299.90 to plaintiff.

**BACKGROUND**

In November of 2005, Plaintiff William McDow brought suit against Parole Officer Marcial Rosado for violation of his civil rights under 42 U.S.C. § 1983. Plaintiff claimed that on October 7, 2003, while entering a New York State parole office to visit his former parole officer, he was illegally stopped and detained, falsely arrested, and subjected to excessive force when defendant Rosado, an off-duty parole officer, approached and pepper-sprayed him. Plaintiff further claimed that he was maliciously prosecuted by the State for the alleged assault of defendant immediately following the pepper-spraying. Defendant claimed he used pepper spray

only after plaintiff punched him.  Defendant filed a motion for summary judgment in March of 2007, which was granted in part and denied in part.  The Court dismissed the malicious prosecution claim and claims relating to the false arrest for assault.

On October 14, 2008, the Court tried plaintiff's remaining claims and a jury found for plaintiff, awarding compensatory damages of $10,000.  The court did not enter judgment for 10 days at the request of defendant so that the parties could pursue settlement negotiations.  The parties could not reach a settlement, however, and the Court entered judgment.  Included in the judgment was an award of pre-judgment interest of $2,862.74 for a total of $12,862.74 for plaintiff on January 23, 2009.   Defendant then moved to amend the judgment to strike the award of pre-judgment interest, claiming it was punitive rather than compensatory.  Plaintiff opposed and cross-moved for attorney's fees and costs in the amount of $93,431.17 pursuant to 42 U.S.C. § 1988 and Rule 54(d) of the Federal Rules of Civil Procedure.

**I       AMENDING THE JUDGMENT**

Courts may award pre-judgment interest at their discretion.  *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998).  Courts take into consideration "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  *Id.*  (Internal quotation marks and citations omitted.)  However, pre-judgment interest is usually awarded in situations where economic injuries have been sustained, or where the plaintiff was "deprived of money that she would otherwise have earned but for defendants' wrongdoing, as in an employment termination case."  *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 371 (S.D.N.Y. 2001); *see Miner v.*

2

*City of Glens Falls*, 999 F.2d 655, 662 (2d Cir. 1993) (affirming award of pre-judgment interest on back pay to fully compensate for damages, because plaintiff was deprived of the use of his salary for that period).  By contrast,

> [a]n award of compensatory damages for pain and suffering . . . is not so easily calculated and represents the jury's translation into monetary terms a loss that is difficult to quantify.  It is not so easily divided into specific periods like back pay and it does not represent an amount that the defendant has withheld from plaintiff in the same way that awards in contract or property actions do.

*Sulkowska*, 170 F. Supp. 2d at 371 (quoting *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 882 (S.D.N.Y. 1995)).

When the jury intends to fully compensate the plaintiff for his injuries, additional pre-judgment interest would be punitive, rather than compensatory, *Sulkowska,* 170 F. Supp. 2d at 371–72, and the purpose of pre-judgment interest is to be compensatory, not punitive.  *United States v. Seaboard Surety Co.*, 817 F.2d 956, 966 (2d Cir. 1987).  In this case, the award was approximate in nature, lacking mathematical exactitude, and fully compensated plaintiff for his mental suffering related to false arrest and excessive force.  There are no allegations of missed pay or other economic distress that would warrant the grant of pre-judgment interest.  The Court, therefore, amends the judgment and strikes its award of pre-judgment interest.

**II      ATTORNEY'S FEES**

Recently the Court of Appeals attempted to clarify the analytic approach to be used in calculating statutory attorneys' fees.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008).  Therein, the Court appeared to abandon the lodestar method whereby an attorney's normal billing rate, adjusted to reflect the prevailing rate in the community, is multiplied by the number of hours worked to arrive at a lodestar

3

numeric. *Id.* at 186. The numeric is then adjusted for case-specific circumstances, generally by application of the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989), to achieve a reasonable fee.[1]  *Id.*  In its place, the Court proposed an approach whereby the district court should focus on

> . . . all of the case-specific variables that we and other courts have identified are relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.

*Id.* at 190. Having established the reasonable hourly rate, the district court should then calculate a "presumptively reasonable fee." *Id.*  Though unstated, this calculation is presumably done after a court has established the "reasonable" number of hours expended on the representation. Also unstated, but again presumed, is that the presumptively reasonable fee is just that—a presumptive figure that can be further adjusted as circumstances warrant.

It is not obvious how this process substantively differs from the lodestar approach except perhaps to emphasize that relevant *Johnson* factors are to be considered when establishing the reasonable hourly rate. As others have noted, however, "some of those variables such as 'the time and labor required' and 'the time limitations imposed by the client or the circumstances' are more logically related to determining the number or hours that should be compensated, and others, such as the extent of success, might be considered . . . in making further adjustment after

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

4

a presumptive fee has been established." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008) (Francis, M.J.). District courts are urged in *Arbor Hill* to approximate market factors is setting a reasonable hourly rate, but it is generally the case that rates are agreed upon before a case is litigated, so that degree of success is factored in the subsequent negotiation of a final fee. In the marketplace, few clients would argue post-litigation that due to limited success counsel's rate should be reduced, say, from $350 per hour to $307 per hour; but not infrequently clients will seek an across-the-board percentage adjustment. Since making such a downward adjustment at the final step of a court's fee calculation mirrors the operation of the marketplace, the Court does not read *Arbor Hill* as precluding such an approach. "A district court may exercise its discretion and use a percentage deduction 'as a practical means of trimming fat from a fee application.'" *Simmonds v. New York City Dep't of Corrections*, No. 06 Civ. 5298, 2008 WL 4303474, at *1 (S.D.N.Y. Sept. 16, 2008) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Reading *Arbor Hill* broadly, then, the Court understands that, as before, it should (1) apply a reasonable hourly rate (2) to a reasonable number of hours (3) to arrive at a "presumptively reasonable fee," which (4) may be subject to further adjustment to arrive at an actual reasonable fee award. The *Johnson* factors, among others, apply with varying force on a non-exclusive basis to each of these steps. While the analysis could be described as a multi-step or single-step process, referring to either a "lodestar" or a "presumptively reasonable fee," happily the result should be the same. *See Reiter v. Metropolitan Transportation Authority*, No. 01 Civ. 2762, 2007 WL 2775144, at *13 n.10 (S.D.N.Y. Sept. 25, 2007) (Gorenstein, M.J.) (in adjusting for limited success "it is of no mathematical significance whether such a reduction is

made based on the attorney's hourly rate, the number of reasonable hours, or the product of these two figures").

      1.     <u>Reasonable Hourly Rate</u>

Plaintiff claims hourly rates of $350 an hour for the two attorneys who tried the case, Leo Glickman and Nicole Bellina.  Defendant argues that this rate is excessive in light of counsel's retainer agreement, which stated that the then-lead attorney billed at $250 per hour in 2004.  This reference is certainly evidence of what a "reasonable, paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 184.  However, as defendant admits, the rates used to calculate an appropriate amount should be "current rates, rather than historic rates." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 210 n.11 (2d Cir. 2005) (internal citation and quotation marks omitted).  "Because attorney's fees are often awarded long after services have been rendered, this rule was designed to compensate litigants for the delay in payment." *Id*; *see also Missouri v. Jenkins,* 491 U.S. 274, 283 (1989) ("compensation received several years after the services were rendered . . . is not the equivalent to the same dollar amount received reasonably promptly as the legal services are preformed, as would normally be the case with private billings").  It is not disputed that plaintiff's counsel currently bills at a rate of $350 per hour as reflected in their contemporaneous retainer agreements.

Counsel's requested rate is well within the range of rates award in similar cases.  *See, e.g.*, *Reiter*, 2007 WL 2775144, at *7 ("The Court notes that a recent survey of case law found that within the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district.").  Counsel's skill, experience, and reputation further support the requested rate.  Both Ms. Bellina and Mr. Glickman are well-seasoned litigators with at least 10 years of experience.  Courts in this District have held that

6

$350 an hour was not an unreasonable rate for a lawyer with 10 years of experience. *See, e.g.*, *Torres v. City of New York,* No. 07-3473, 2008 WL 419306, at *3 (S.D.N.Y. Feb. 14, 2008) (Lynch, J.) (awarding Ms. Bellina $350 per hour); *Barfield v. New York Health & Hosps. Corp.*, 537 F.3d 132, 151–52 (upholding rate of $350 an hour for attorney with 5 years of experience, although total fee was reduced for limited success). None of the other *Johnson* factors have been raised by the parties in addressing a reasonable hourly rate.[2] Defendant separately contends that counsel's hours were excessive and that counsel's fee should be adjusted downward for limited success. These issues are now addressed.

      2.      <u>Reasonable Number of Hours</u>

While the number of hours and how they are spent must be reported to the court, the court does not need to know the exact number of minutes spent on each activity. *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 473 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49–50 (2nd Cir. 2000). Defendant's objections raise a number of issues, most of which the Court finds groundless. Plaintiff's records generally have the required level of specificity, although the Court agrees that some charges should be adjusted. Defendant seeks a 50 percent reduction for travel time, to which plaintiff agrees. Defendant argues that the paralegal Sherrod improperly documented two telephone calls, for a reduction of .2 hours. Defendant claims plaintiff billed clerical tasks at paralegal rates, and urges a 4.5-hour reduction. Clerical tasks are not billed at paralegal rates, *Jenkins*, 491 U.S. at 288 n.10, so the court agrees with defendant and strikes 4.5 hours for Sherrod. However, plaintiff's request for an additional 5.5 hours for work done since plaintiff's initial fee application is approved. Subject to the foregoing adjustments, the Court finds that the 263 hours spent on taking this case through to verdict is quite reasonable.

---

[2] Defendant does not challenge the hourly rates of $75 for Sherrod and $100 for Walker.

### 3. Reasonable Adjusted Fee

The presumptively reasonable fee resulting from the multiplication of the reasonable hourly rates by the reasonable number of hours is $89,750.  The court concludes, however, that a downward adjustment to reflect plaintiff's limited success is warranted.  One of the most important factors courts take into account in awarding fees is the "degree of success obtained" by counsel.  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *accord Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005); *Pino v. Locascio*, 101 F.3d 235, 237–38 (2d Cir. 1996).  The level of success refers not only to the success of specific claims, but also to the "quantity and quality of relief obtained."  *Barfield*, 537 F.3d at 152 (internal citations and quotations omitted).  Where a plaintiff has achieved only limited success—even where, as here, his claims were interrelated, non-frivolous and made in good faith—the customary rate may still produce an excessive amount.  *Id.* (citing *Hensly v. Eckerhart*, 461 U.S. 424, 436 (1983)).  "The question of attorneys' fees, including fees with respect to unsuccessful claims, is an issue left to the discretion of the district court.  Where the district court determines that the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or [are] based on related legal theories, it is not an abuse of discretion for the court to award the entire fee."  *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (internal citation and quotation marks omitted.)  Nevertheless, a district court may impose a percentage deduction 'as a practical means of trimming fat from a fee application.'"  *Kirsch*, 148 F.3d at 173; *see also Barfield*, 537 F.3d at 153 (50 percent reduction for limited success).

In this case, plaintiff alleged that defendant arrested him without probable cause and applied excessive force (pepper spray) in doing so.  The jury found for plaintiff on these allegations, awarding $10,000 in compensatory damages.  Plaintiff's complaint also asserted

claims for a second false arrest and malicious prosecution relating to the altercation that occurred immediately after the initial arrest and use of pepper spray. These claims were dismissed on summary judgment. Depending on how one reads his complaint, plaintiff was seeking between two and three million dollars on these claims. Although "[e]ven a modest award of damages in an excessive force case . . . confers an 'overall benefit to society,'" *Anderson v. City of New York*, 132 F. Supp. 2d 239, 242 (S.D.N.Y. 2001) (quoting *Milwe v. Cavuoto*, 653 F. 2d 80, 84 (2d Cir.1981)), it is difficult to conclude that plaintiff achieved anything close to what was sought. On the other hand, the Court cannot ignore the defendant's steadfast refusal to make any offer of settlement in this case, a strategy unsupported by the jury verdict and one that directly resulted in a material increase in counsel's hours. While plaintiff's level of success may have otherwise warranted a greater reduction in the fee award, *see Anderson*, 132 F. Supp. 2d at 242–43, the Court exercises its discretion to reduce fees in this case by 12 percent.

## CONCLUSION

For the reasons stated above, the Court grants plaintiff's motion for attorney's fees in the amount of $78,980 and costs in the amount of $3,299.90. The Court strikes its prior award of prejudgment interest in the amount of $2,862.74.

SO ORDERED.

Dated: New York, New York
       September 29, 2009

Richard J. Holwell
United States District Judge

9